# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| EDGAR SANCHEZ ASCENSION, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-09-792 |
| | § | |
| THIND HOTELS, LLC *et al.*, | § | |
| *Defendant*s. | § | |

## MEMORANDUM AND ORDER

Pending before the court is defendants Thind Hotels, LLC ("Thind") and *e*Employer

Solutions, Inc.'s (*e*ESI) motion to dismiss or, alternatively, to compel arbitration and stay the case

pending arbitration.  Dkt. 19.  Also pending is defendant Holiday Inns, Inc.'s ("HII") motion to

dismiss or, in the alternative, motion for summary judgment.[1]  Dkt. 20.  Upon consideration of the

motions, the response, and the applicable law, the motions are GRANTED IN PART and DENIED

IN PART.  Specifically, Thind and *e*ESI's motion to dismiss is GRANTED.  Dkt. 19.  HII's motion

to dismiss is DENIED and the motion for summary judgement is GRANTED.   Dkt. 20.

Accordingly, this case is DISMISSED with prejudice.

## BACKGROUND

Plaintiff Edgar Sanchez Ascension worked as a night auditor at a Holiday Inn Express located

in The Woodlands, Texas.[2]  Dkt. 1 at 3.  Upon beginning his employment in November, 2006,

Ascension signed an employment agreement, which contained an arbitration clause.  *See* Dkt. 19,

Ex. B.  On February 23, 2007, Ascension alleges he was sexually harassed at work when he was

---

[1]The plaintiff has not responded to Holiday Inns, Inc's motion, and therefore under the local rules of the Southern District of Texas, that motion will be considered unopposed.  S.D. TEX. LOC. R. 7.4 ("Failure to respond will be taken as a representation of no opposition.").

[2]Ascension was hired by *e*ESI, which provided employees to Thind to work at its hotel. Thind in turn operated the Holiday Inn Express as a licensee of Holiday Hospitality Franchising, Inc., a party not named in this suit.

inappropriately grabbed by his supervisor Randy Rolland.  *Id.*  The incident was recorded by the hotel security camera.  *Id.* at 4.  Ascension formally complained to the assistant manager of the hotel about this incident.  *Id.*  Ascension's hours were subsequently cut from 32 hours a week to approximately 16 hours a week.  *Id.*  Afer deciding that no action was being taken by the hotel to investigate his allegations, Ascension filed a formal complaint with the EEOC on March 29, 2007.  *Id.*  Ascension's employment was later terminated by the hotel on April 17, 2007.  *Id.*

On March 17, 2009, Ascension filed the present suit against defendants Thind, HII, and *e*ESI. In his complaint, Ascension seeks damages from the defendants under Title VII of the Civil Rights Act of 1964 for sexual harassment, hostile work environment, and retaliation.  *See* Dkt. 1. Defendants Thind and *e*ESI now move the court to compel arbitration of Ascension's claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*  Dkt. 19.  HII has filed a separate motion to dismiss the claims against it, or, alternatively, grant summary judgment in its favor.  Dkt. 20.

### ANALYSIS

Because resolution of HII's motion will impact the disposition of Thind and *e*ESI's motion, the court addresses HII's motion first.

**A.     HII's Motion to Dismiss or Motion for Summary Judgment**

HII asks the court to dismiss the claims against it, or alternatively, to grant summary judgment in its favor.  Dkt. 20.  HII contends that it was not properly named as a defendant in the lawsuit, having never been Ascension's employer.  Dkt. 20 at 1.  Ascension did not file a response to this motion.

2

*1.     Standard of Review*

Federal Rule of Civil Procedure 12(b)(6) allows dismissal if a plaintiff fails to state a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6); *Aschroft v. Iqbal,* ___ U.S.___, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 127 S.Ct. 1955 (2007).  In considering 12(b)(6) motions, courts generally must accept the factual allegations contained in the complaint as true.  *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).  The court does not look beyond the face of the pleadings when determining whether the plaintiff has stated a claim under Rule 12(b)(6).  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  In order to survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct., at 1949 (quoting *Twombley*, 550 U.S. at 570).  This plausibility standard requires the plaintiff to plead facts sufficient to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Thus, the plaintiff must demonstrate "more than a sheer possibility that the defendant has acted unlawfully."  *Id.*

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Burrell v. Dr. Pepper/Seven Up*

*Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322.  If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id.*  "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25.  To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).  The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch.*

*Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).  However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts."  *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

2.     *Motion to Dismiss*

HII asks the court to dismiss the claims against it because Ascension's complaint plainly states that HII is not registered to do business in Texas.  Dkt. 20 at 3.  In fact to serve HII, Ascension was required to serve a separate entity's registered agent.  *Id.*  This argument appears premised on the assumption that HII could not have been Ascension's employer at the time of the incident because HII is not registered to do business in the state of Texas.

HII's argument, however, would seem to require the court to determine as a matter of law that an entity not registered to do business in Texas could never conduct business in Texas and, therefore, never have employees.  This of course ignores the possibility that a non-registered entity could, in fact, be operating in Texas and have employees, in violation of the Texas Business Organization Code.  The court declines to make such a determination, and, therefore, denies the motion to dismiss.

3.     *Motion for Summary Judgment*

In the alternative, HII asks this court to grant summary judgment for the same reason—that it was not Ascension's employer at the time of the incident.  Dkt. 20 at 3.  As evidence to support its motion, HII includes an affidavit by Charles Broun III, Vice President, Franchise Operations &

PIP, Americas for Six Continents Hotels, Inc., who is familiar with the operations of HII, an affiliate business.  Dkt. 20, Ex. B.  In his affidavit, Broun states that HII did not "own, operate, maintain, manage, possess or control the hotel" that is the subject of the Ascension's complaint.  Dkt. 20 at 4; *see also* Dkt. 20, Ex. B.  Nor was HII the franchisor of the hotel.  *Id.*  Additionally, HII contends, summary judgment is proper because Ascension never named HII in his EEOC complaint.  Dkt. 20 at 5.  Thus, even if HII were a proper party to the suit, Ascension did not exhaust his administrative remedies against HII as required by Title VII.  *Id.*

HII has met its initial burden to show an absence of a genuine issue of material fact.  Having put forth no evidence to dispute HII's contentions, Ascension has not created a genuine issue of material fact.  The court, therefore, grants HII's motion for summary judgment.

**B.      Thind & *e*ESI's Motion to Dismiss or Compel Arbitration and Stay the Case**

*1.      Standard of Review*

Courts use a two-step inquiry to determine whether an arbitration clause is enforceable as it relates to the dispute at hand.  *See Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).  First, courts must determine whether the parties agreed to arbitrate the dispute.  And second, the court must examine "'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'"  *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346 (1985)).

*2.      The Arbitration Provision*

**A.      Did the Parties Agree to Arbitrate the Dispute?**

This first question "depends on two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the

arbitration agreement.  *Id.* (citing *Webb v. Investacorp*, 89 F.3d 252, 257 (5th Cir. 1996)).

        1.        <u>Is There a Valid Agreement?</u>

      Whether there is a valid agreement between the parties is determined according to state law—in this case Texas law.  *Banc One*, 367 F.3d at 429.  "While there is a strong federal policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate."  *Id.* (citing *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)).  Texas law is the same and will not invalidate an arbitration agreement absent compelling reasons of law or equity for the revocation of a contract, like fraud or unconscionability. TEX. CIV PRAC. & REM. § 171.001; *Emerald Tex., Inc. v. Peel*, 920 S.W.2d 398, 402 (Tex. App.–Houston [1st Dist.] 1996, no writ).

      Ascension signed two documents that contained arbitration provisions: an application for employment signed on November 7, 2006, and an employment agreement signed on November 13, 2006.  *See* Dkt. 19, Exs. A, B.  Ascension contends that the arbitration provision in the employment application is unenforceable because it is "illusory, totally unilateral and without consideration." Dkt. 24 at 4.  Without reaching the merits of this argument, the court finds the arbitration provision in the employment application is a moot issue because the later employment agreement clearly states that it "supercedes any prior written or oral agreement between the [parties]."  Dkt. 19, Ex. B ¶ M.

      Ascension next argues that the arbitration clause in the employment agreement is invalid—constituting "mere notice of an arbitration provision" rather than a valid arbitration agreement because it does not comply with the American Arbitration Association ("AAA") protocol. Dkt. 24 at 4.  Additionally, the employee handbook that Ascension was provided at the time of his employment was missing the odd-numbered pages, thus omitting the paragraph entitled "Mediation & Arbitration" found on page 5 of the handbook.  Further, this paragraph refers to an

"Administrator," but the "Administrat[or] is not even identified and there is no way for [Ascension] to contact the Administrator for clarification if he had tried." *Id.* at 4–5. Lastly, Ascension argues the arbitration agreement, should the court find one exists, lacks mutuality because the agreement can be amended, modified, or terminated at any time.[3]  Dkt. 24 at 5.  Thind and *e*ESI contend that there is a valid arbitration agreement. Ascension clearly had notice of the arbitration provision, having signed two separate documents (the application for employment and the employment agreement) that contained the provision, and in fact specifically agreed to the provision as part of his acceptance of employment.  Dkt. 19 at 5.

The arbitration clause in the employment agreement provides that "[a]ny controversy arising between any parties to this agreement, *e*ESI, CLIENT, EMPLOYEE . . . will be submitted to mediation, failing settlement in mediation, to binding arbitration.  In accordance with the rules of the American Arbitration Association."  Dkt. 19, Ex. B ¶ H.  Under Texas law, this is a valid and binding contract.  A party need not sign an arbitration provision to make it enforceable as long as the provision is written and the parties agree to it.  *See In re AdvancePCS Health LP*, 172 S.W.3d 603, 606 (Tex. 2005).  In the present case, Ascension did in fact sign the agreement.  It is of no import that the arbitration provision does not comply with AAA protocol.  Parties are free to construct arbitration agreements as they see fit.  *See Volt Info Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 479, 109 S. Ct. 1248 (1989).  Additionally, there is mutuality because both sides—employer and employee—agreed to arbitrate any disputes that might arise between them. The fact that the

---

[3]The exact language Ascension quotes in his response is that the "agreement will be evaluated and may be amended, modified or terminated at any time with or without notice."  Dkt. 24 at 5.  It is not clear, however, where this quoted language comes from as there is no citation in the response to support it.  Additionally, the court can find no language that matches it in either the employment agreement nor the employee handbook.  The only language that comes close is a general statement in the handbook that the procedures, practices, policies, and benefits listed therein "may be modified or discontinued at any time.  We will try to inform you of any changes as they occur."  Dkt. 24, Ex. B at 1. The court, therefore, assumes this is what Ascension is referring to, although misquoted.

arbitration provision could be modified at any time does not negate this mutuality.  Had, for example, *e*ESI made a modification and Ascension continued to work for the company after receiving notice, then Ascension would have accepted the changes as a matter of law.  *In re Halliburton*,  80 S.W.3d 566, 568 (Tex. 2002).

While it is unfortunate that Ascension did not receive a complete copy of the employee handbook, this fact does not invalidate the arbitration agreement.  The relevant paragraph in the employment handbook states only that

> The Company has adopted the Employment Dispute Mediation & Arbitration Procedure, as the sole way to resolve all disputes that may arise between its Employees and Employer, the Client or any related parties.  Your agreement to use this procedure for resolving disputes is a condition of your employment. We are convinced that this dispute resolution mechanism provides a superior and mutually beneficial alternative to traditional litigation methods, and we encourage you to contact the Administrator if you have any questions about the procedure.

Dkt. 24, Ex. B at 5.  The information contained in this paragraph does not alter, but rather supplements the arbitration provision Ascension signed as part of his employment agreement. The court, therefore, finds that the parties had a valid arbitration agreement.

### 2. Is the Dispute Within the Scope of the Arbitration Provision

Having determined that the parties have a valid agreement to arbitrate, the court now turns to a determination of the scope of the arbitration provision.  "[O]nce a court determines that an agreement to arbitrate exists, the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration."  *Banc One*, 367 F.3d at 429. The arbitration agreement in this case is very broad, covering "[a]ny controversy arising between any parties to this agreement, *e*ESI, CLIENT [Thind], EMPLOYEE (or their agent, officer, director, or affiliate), including but not limited to common law, statutory law, tort or contract claims." Dkt. 19, Ex. B ¶ H.  Thind and *e*ESI contend, and Ascension does not dispute, that this broad provision

covers Ascension's claims of on-the-job sexual harassment, hostile work environment, and wrongful termination. *See* Dkt. 19 at 5.  The court agrees, and therefore finds that the dispute falls within the scope of the arbitration agreement.

### B.     Legal Constraints External to the Agreement

Having determined that there is a valid agreement to arbitrate Ascension's claims, the court moves to the question of whether legal constraints external to the parties' agreement foreclose submitting Ascension's claims to arbitration.  *Fleetwood*, 280 F.3d at 1073.  "Just as it is the congressional policy manifested in the Federal Arbitration Act that requires courts liberally to construe the scope of arbitration agreements covered by that Act, it is the congressional intention expressed in some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable."  *Mitsubishi*, 473 U.S. at 627. Therefore, absent some showing that Congress expressly exempted sexual harassment, hostile work environment, or wrongful termination claims from arbitration, the presumption under the Federal Arbitration Act is that arbitration must be compelled.  *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 749 (5th Cir. 1996).

"[T]he burden is on [Ascension] to show that Congress intended to preclude a waiver of the judicial forum" for his Title VII claims.  *Gilmer v. Interstate/Johnson Lane Corp*, 500 U.S. 20, 26, 111 S. Ct. 1647 (1991).  Ascension has presented the court with no evidence that Congress intended any different treatment of his claims.  Additionally, the Fifth Circuit has made it clear that Title VII claims by workers not engaged in the movement of goods are properly subject to mandatory arbitration.  *Rojas*, 87 F.3d at 748.  Therefore, there are no external legal constraints to compelling arbitration on Ascension's claims.  As all of his claims are properly subject to arbitration, Thind and

eESI's motion to dismiss is granted.  *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992).

## CONCLUSION

Pending before the court is HII's motion to dismiss or, in the alternative, motion for summary judgment.  Dkt. 20.  For the reasons stated above, the motion to dismiss is DENIED and the motion for summary judgment is GRANTED.  Additionally, Thind and *e*ESI's motion to dismiss (Dkt. 19) is GRANTED.  Because the court has granted HII's motion to dismiss and all of the remaining claims are properly subject to arbitration, Ascension's claims are DISMISSED with prejudice.

It is so ORDERED.

Signed at Houston, Texas on February 8, 2010.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY

11